**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CR-23-192-G** |
| | ) | |
| **JIU BING LIN,** | ) | |
| **a/k/a Jack Lin,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

On October 17, 2023, Defendant Jiu Bing Lin was charged in a Superseding Indictment with drug conspiracy (Count 1), money laundering conspiracy (Count 2), money laundering (Counts 3-6), and monetary transaction in criminally derived property (Counts 7-10). *See* Superseding Indictment (Doc. No. 35). During trial, Defendant twice moved for entry of a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *See* Trial Tr. (Doc. Nos. 211, 211-1, -2, -3, -4, -5, -6, -7, 212, 217) at 1020-27, 1129. Those motions were denied. *Id.* On December 18, 2024, a jury returned a guilty verdict on the four counts of laundering of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and acquitted Defendant on the remaining counts. *See* Jury Verdict (Doc. No. 196).

Now before the Court is Defendant's Motion for Judgment of Acquittal or New Trial (Doc. No. 201). The Government has filed a Response (Doc. No. 216), and Defendant has filed a Reply (Doc. No. 224).

## I. STANDARD OF REVIEW

Defendant primarily seeks relief under Rule 29 of the Federal Rules of Criminal Procedure, which permits a defendant to renew a motion for a judgment of acquittal within 14 days after a guilty verdict or discharge of the jury. *See* Def.'s Mot. at 6-25; Fed. R. Crim. P. 29(c)(1), (c)(2).

In considering a Rule 29 motion based upon the insufficiency of the evidence at trial, "the Court may deem the evidence 'sufficient to support a conviction if, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Kaspereit*, No. CR-18-297-R, 2019 WL 5684509, at *1 (W.D. Okla. Nov. 1, 2019) (quoting *United States v. Benford*, 875 F.3d 1007, 1014 (10th Cir. 2017)). In conducting its inquiry, the Court "do[es] not weigh conflicting evidence []or consider the credibility of witnesses." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004). Rather, the Court "determine[s] whether the evidence, if believed, would establish each element of the crime." *Id.* (alteration and internal quotation marks omitted).

## II. DISCUSSION

### *A. Allegedly Inconsistent Verdicts*

Underlying Defendant's Motion is the contention that his acquittal upon certain charges—for drug conspiracy, money laundering conspiracy, and conducting monetary transactions in criminally derived property—reflects a verdict inconsistent with his conviction for money laundering in Counts 3 through 6 and requires invalidation of the

money laundering convictions. *See* Def.'s Mot. at 18-24. "It is well-settled, however, that an inconsistent verdict is not a sufficient reason for setting a verdict aside." *United States v. Irwin*, 682 F.3d 1254, 1271 (10th Cir. 2012). "Consistency in verdicts is not required because, where truly inconsistent verdicts have been reached, the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Id.* (alteration and internal quotation marks omitted). "For this very reason, . . . courts have upheld convictions for money laundering even where there was an acquittal on the predicate offense." *Id.* "Thus, whether or not a verdict is inconsistent, a court must uphold a defendant's conviction if there was sufficient evidence to support a guilty verdict on the charge for which the defendant was convicted." *United States v. Cerno*, No. CR-05-1603, 2006 WL 8443204, at *4 (D.N.M. Dec. 12, 2006) (citing *United States v. Jaynes*, 75 F.3d 1493, 1509 (10th Cir. 1996)).

As a result, any mere inconsistency in the verdicts does not provide a basis to set aside the relevant convictions.

*B. Sufficiency of the Evidence*

The statute criminalizing money laundering provides:

> **(a)(1)** Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> . . .
>
> **(B)** knowing that the transaction is designed in whole or in part—

> **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . ,
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).

As reflected in the jury instructions, for each of Defendant's convictions for money laundering in violation of § 1956(a)(1)(B)(i) the Government was required to prove:

> *First*: Defendant conducted a financial transaction;
>
> *Second*: the financial transaction involved the proceeds of a specified unlawful activity;
>
> *Third:* Defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and
>
> *Fourth*: Defendant conducted the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity.

*See* Jury Instrs. (Doc. No. 194) at 47.

Defendant challenges the sufficiency of the evidence supporting his conviction for money laundering on Count 3, 4, 5, and 6, asserting that the Government failed to establish the essential elements of the offense beyond a reasonable doubt. *See* Def.'s Mot. at 10-25. The Government responds that it satisfied its burden by presenting evidence that: Defendant deposited proceeds from an unlawfully operated marijuana business into his marijuana-related business ("MRB") account at Regent Bank, concealed the source and nature of those proceeds by then transferring them to a non-MRB account at Bank of Oklahoma, and then used the funds to pay expenses incurred by the marijuana business.

*See* Gov't's Resp. at 12. As alleged in the Superseding Indictment, and presented at trial, each of the four money laundering counts is based on a transfer of funds through a check issued from Defendant's MRB account at Regent Bank (the "Jack Lin Account") and deposited in the non-MRB account at Bank of Oklahoma (the "Ding An account"). *See* Superseding Indictment at 6-7; Gov't's Trial Ex. 400.

1. Defendant Conducted a Financial Transaction

Defendant first contends that the Government failed to prove Defendant "conducted" the four financial transactions at issue. *See* Def.'s Mot at 24-25. To meet this burden, the Government was required to show that Defendant "initiat[ed], conclud[ed], or participat[ed] in initiating or concluding, a transaction." Jury Instrs. at 42; *see also* 18 U.S.C. § 1956(c)(2).

At trial, the Government presented evidence reflecting that Defendant signed the four relevant checks drawn from the MRB account before they were deposited into the non-MRB account. *See* Gov't's Trial Ex. 400. The Government also presented examples of Defendant's signature for the jury to compare with the signatures on the checks. *See* Gov't's Trial Ex. 401.

Defendant, relying on *United States v. Caldwell*, 560 F.3d 1214 (10th Cir. 2009), argues that signing a check does not qualify as conducting a transaction. *See* Def.'s Mot. at 25. Although *Caldwell* states that "[m]oney laundering requires more than simply writing a check with the proceeds of unlawful activity," the Tenth Circuit in that case was addressing whether a signature evidenced an intent to conceal. *Caldwell*, 560 F.3d at 1222. The appellate court's statement was not directed to the question of whether signing a check

constitutes conducting a financial transaction under § 1956(a)(1). By signing a check, a person authorizes the transfer of funds and thereby initiates or participates in the transaction. As the sole authorized signer on the MRB account, *see* Gov't's Trial Ex. 400; Trial Tr. at 892, Defendant was the only person who could authorize the transfers of funds at issue. The evidence presented was therefore sufficient for the jury to find that Defendant conducted a financial transaction. *Cf. United States v. Gonzales*, 918 F.3d 808, 813 (10th Cir. 2019) ("Gonzales's admission that he transferred money from one account (in his name) to another account (in his daughter's name) undoubtedly qualifies as conducting a financial transaction for purposes of § 1956(a)(1)(B)(i).").

2. The Transferred Funds Were Proceeds of Specified Unlawful Activity

Defendant next argues that the Government failed to establish that the funds transferred through the four checks were "proceeds" of a "specified unlawful activity." *See* Def.'s Mot. at 20-24. The term "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); *accord* Jury Instrs. at 44. The jury was instructed that "specified unlawful activity" "includes the knowing or intentional distribution or possession with intent to distribute a Schedule I controlled substance under federal law, or conspiracy to do the same." Jury Instrs. at 47; *see also id.* at 32 (instructing the jury that "[m]arijuana is a Schedule I controlled substance under federal law"); Superseding Indictment at 7 (identifying the "specified unlawful activity" for Counts 3-6 as "the felonious receiving, buying, selling, and dealing in controlled

substances and conspiring to do the same . . . in violation of Title 21, United States Code, Sections 841(a) and 846"); *Gonzales*, 918 F.3d at 812-14.[1]

The evidence at trial showed that Defendant owned and operated two marijuana farms (or "grows"): (1) one located in Maramec, Oklahoma, operating under a state-issued license held by Jack Lin LLC, a company registered in Defendant's name; and (2) one located in Mulhall, Oklahoma. *See* Trial Tr. at 234, 247, 641. Documents connecting Defendant to both operations were found during the execution of a search warrant on Defendant's home. *See id.* at 66, 81-85, 93-108. Yuan Yuan Luo testified that the Mulhall grow was Defendant's farm and the Maramec grow was a joint venture in which she and Liang Wu owned and were entitled to one half of the marijuana produced, while Defendant owned and was entitled to the remaining half of the marijuana. *See id.* at 644-45, 647.

---

[1] As relevant here, the term "specified unlawful activity" can mean:

> **(A)** any act or activity constituting an offense listed in [18 U.S.C. § 1961(1)] of this title except an act which is indictable under subchapter II of chapter 53 of title 31; [or]
>
> **(B)** with respect to a financial transaction occurring in whole or in part in the United States, an offense against a foreign nation involving—
>
> **(i)** the manufacture, importation, sale, or distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act)[.]

18 U.S.C. § 1956(c)(7)(A), (B)(i).

The Tenth Circuit has held that drug trafficking offenses constitute "specified unlawful activity" pursuant to § 1956(c)(7)(B)(i). *See, e.g.*, *United States v. Otuonye*, 171 F.4th 1192, 1202 (10th Cir. 2026); *United States v. Adargas*, 366 F.3d 879, 881 & n.4 (10th Cir. 2004). Other circuit courts have reached the same result by concluding that drug trafficking crimes are "specified unlawful activity" due to § 1956(c)(7)(A)'s incorporation of the offenses listed in 18 U.S.C. § 1961(1). *See, e.g.*, *United States v. Bansal*, 663 F.3d 634, 657-58 (3d Cir. 2011); *United States v. Davis*, 122 F.4th 71, 77 (2d Cir. 2024).

Yuan Yuan Luo testified that Liang Wu would sometimes sell marijuana on Defendant's behalf. *Id.* at 647. Naigang Lin testified that he also acted as a marijuana broker for Defendant, securing out-of-state buyers and detailing two sales he brokered involving approximately 300 to 400 pounds of marijuana each, with an estimated profit of $500,000 per sale. *See id.* at 426-29. Yuan Yuan Luo testified to seeing Defendant personally pack and deliver marijuana to an unknown individual while she and Liang Wu acted as lookouts for the transaction. *See id.* at 648-49.

Yuan Yuan Luo further testified that she handled dividing the cash from the Maramec farm sales and would give Defendant his portion. *See id.* at 650, 652. Yuan Yuan Luo stated that Defendant took a portion of his proceeds to deposit in a bank account and left some in cash. *See id*. at 653-54.

Testimony and bank documents presented at trial reflected that Defendant was the sole authorized signer for the Jack Lin Account. *Id.* at 891-93; Gov't's Trial Ex. 400. To deposit funds into such an MRB account, depositors are required to provide proof-of-sales documentation. *Id.* at 853, 970.

The jury, if it believed the Government's evidence, therefore could reasonably have concluded that Defendant participated in the distribution and sale of marijuana grown at the Maramec and Mulhall farms and deposited profits from such activity into the Jack Lin Account. Thus, the jury could reasonably have concluded that the funds transferred from the Jack Lin Account through the four identified transactions constituted "property derived from or obtained or retained, directly or indirectly," including "the gross receipts of," the specified unlawful activity of marijuana distribution and sale. 18 U.S.C. § 1956(c)(9).

3. <u>Defendant Had Knowledge of the Nature of the Proceeds</u>

Defendant next argues that the Government presented insufficient evidence to establish that Defendant "knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity." Jury Instrs. at 47; *see* Def.'s Mot. at 19-20; 18 U.S.C. § 1956(a)(1). In light of the testimony and evidence describing Defendant's personal involvement in the distribution and sale of marijuana, as well as Defendant's deposits into the marijuana-purposed Jack Lin Account, a reasonable jury could infer that Defendant knew that the funds involved in each of the four check transfers were proceeds of unlawful marijuana distribution. *See United States v. Fishman*, 645 F.3d 1175, 1188 (10th Cir. 2011); *United States v. Ruiz-Castro*, 92 F.3d 1519, 1532 (10th Cir. 1996), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006).

4. <u>The Transactions Were Designed in Whole or in Part to Conceal or Disguise the Nature and Source of the Proceeds</u>

Finally, Defendant argues that the Government failed to establish that the four specified check transfers from the Jack Lin Account to the Ding An Account "w[ere] designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity." Jury Instrs. at 47; *see* Def.'s Mot. at 12-19.

To sustain its burden on the intent-to-conceal element, the Government must "present substantial evidence of concealment." *United States v. Shepard*, 396 F.3d 1116, 1121 (10th Cir. 2005) (emphasis omitted). "Actions that are merely suspicious and do not

provide substantial evidence of a design to conceal will not alone support a conviction." *Id.* (alteration and internal quotation marks omitted). The Government need not prove that Defendant concealed his identity, however. *See Gonzales*, 918 F.3d at 816. Nor is it "necessary that the money laundering transaction make the criminal proceeds appear to be legitimate; it is enough that the transaction is intended to conceal one of the statutory attributes" "in any manner." *Id.*

"The following types of evidence may be indicia of an intent to conceal or disguise" the nature, location, source, ownership, or control of criminal proceeds:

> statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals.

*United States v. Cunningham*, 159 F.4th 740, 750 (10th Cir. 2025) (internal quotation marks omitted).

The evidence presented at trial showed that four checks issued from the Jack Lin Account were deposited into the Ding An Account—a general business account at Bank of Oklahoma in the name of Ding An, LLC. *See* Trial Tr. at 728-35; Gov't's Trial Exs. 400, 401. Testimony and documentary exhibits reflected that Defendant was one of three authorized signers on the Ding An Account and was present when the account was opened. *Id.* The Bank of Oklahoma employee who opened the account testified that, after discussing the nature of the business with the signers, the signers elected to describe Ding An as an equipment, retail, and service business and specifically represented that it had no

affiliation with marijuana. *See id.* at 732-35. She further testified that had the signers disclosed that their business involved growing and selling marijuana, Bank of Oklahoma would not have opened the account. *See id.* at 733. The Bank of Oklahoma employee testified that Defendant and the other signers were informed that the Ding An account could not be used for marijuana-related funds. *See id*. at 733-35.

The Government presented evidence that Defendant transferred funds from the Jack Lin Account into the Ding An Account through the following four checks:

- Check #1002 issued on April 10, 2021, in the amount of $60,000, signed by Defendant and deposited in the Ding An account on April 12, 2021. *Id.* at 902-03.
- Check #1003 issued on April 29, 2021, in the amount of $90,000, signed by Defendant and deposited in the Ding An account on April 29, 2021. *Id*. at 903.
- Check #101 issued on July 4, 2021, in the amount of $150,000, signed by Defendant and deposited in the Ding An account on July 7, 2021. *Id*.
- Check #103 issued on August 5, 2021, in the amount of $100,000, signed by Defendant and deposited into the Ding An account on August 6, 2021. *Id*. at 904.

The Government also presented evidence that the funds deposited into the Ding An Account were then used to pay expenses associated with Defendant's marijuana grows, including payments to an electric company servicing rural areas and marijuana farms and to an agricultural products company. *Id*. at 906-07.

An expert witness for the Government opined that the money transfers were consistent with a money laundering scheme, explaining that Defendant used the Jack Lin Account to move illicit funds into the banking system and then concealed the nature and source of those funds by transferring them to a bank known not to provide banking services to marijuana businesses and into an account under the name of a different business entity,

Ding An, LLC. *See id*. at 910-12. The expert witness further testified that there was no legitimate purpose for the Ding An account apart from concealment. *See id*. at 912-13.

Such evidence would allow a reasonable jury to find that the Ding An Account was opened under the guise of an equipment, retail, and service business unrelated to the marijuana industry, that it had multiple signatories and was held in the name of a different business entity, and that funds deposited into the Ding An Account were used to pay expenses associated with Defendant's marijuana operations. The above facts correspond with several of the concealment indicia identified in *Cunningham*, including depositing illegal proceeds into the account of a purported legitimate business, structuring transactions to avoid attention, and expert testimony explaining how the transactions served to conceal the source of the funds. *See Cunningham*, 159 F.4th at 750. Viewed collectively, the evidence presented by the Government was sufficient for a reasonable jury to find that the four check transfers from the Jack Lin Account to the Ding An Account were designed to conceal the source of the funds as proceeds from marijuana sales.

At trial, Defendant argued that the Ding An Account was opened and the relevant deposits were made as the result of a business mistake, based on an accountant's advice that Defendant maintain a separate account for business expenses. *See* Trial Tr. at 1003-05. Even if the jury found that one purpose of opening the Ding An Account was to facilitate payment of business expenses, that would not preclude a finding that the four check transfers were also designed "at least in part" to conceal that the funds derived from marijuana sales. *See Cunningham*, 159 F.4th at 751 ("[Section] 1956(a)(1)(B)(i) requires only that the transaction be designed 'in whole or *in part*' to conceal." (internal quotation

marks omitted)). Because the evidence at trial was sufficient for a reasonable jury to conclude that each of the four specified check transfers was designed, in whole or in part, to conceal the source of the funds, the jury was entitled to reject Defendant's argument.

5. Summary

Because the evidence presented at trial was sufficient for the jury to find that the Government had established, for each of Counts 3, 4, 5, and 6, each element of the charge of money laundering in violation of § 1956(a)(1)(B)(i), Defendant is not entitled to a judgment of acquittal on this ground.

*C. The Rohrabacher-Blumenauer Amendment*

Defendant next argues that Counts 3 through 6 of the Superseding Indictment should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) for "failure to state an offense" because the charges are inconsistent with a federal congressional appropriations rider. Fed. R. Crim. P. 12(b)(3)(B)(v); *see* Def.'s Mot. at 25-27.

Rule 12(b)(3)(B) prescribes in relevant part:

> **(3) Motions That Must Be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:
>
> . . .
>
> **(B)** a defect in the indictment . . . , including:
>
> . . .
>
> **(v)** failure to state an offense[.]

Fed. R. Crim. P. 12(b)(3)(B)(v).

As a threshold matter, Defendant's request is untimely made. In the present motion, Defendant offers no reason that the dismissal request could not have been made prior to

trial, asserting only that such a motion may be heard by the Court "'[a]t any time while the case is pending.'" Def.'s Mot. at 25 (citing Fed. R. Crim. P. 12(b)(3)(B)). The language quoted by Defendant, however, was amended in 2014 and was no longer in effect during the pendency of this case. *Compare* Fed. R. Crim. P. 12 (2013), *with id.* (2024).[2]

Even if the request were to be considered on the merits, Defendant has not shown that dismissal is warranted. Where, as here, a defendant challenges an indictment for "failure to state an offense," the Court "generally is bound by the factual allegations contained within the four corners of the indictment." Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003), *overruled on other grounds as recognized in United States v. McBride*, 94 F.4th 1036, 1043 n.9 (10th Cir. 2024). Defendant does not dispute that the allegations in the Superseding Indictment, taken as true, "set[] forth the elements of the offense charged" and "put[] the defendant on fair notice of the charges against which he must defend." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (internal quotation marks omitted); *see* Superseding Indictment at 6-7. Rather, Defendant argues that his money laundering convictions are inconsistent with the Rohrabacher-Blumenauer Amendment (the "Rider"). *See* Def.'s Mot. at 25-27.

---

[2] Prior to trial, Defendant cited the rider in addressing a motion in limine made by the Government (Doc. No. 48), which sought to prohibit Defendant from raising a defense based on compliance with state law. *See* Def.'s Resp. to Gov't's Mot. in Limine (Doc. No. 131) at 9-19. Defendant's Response and Counter-Motion expressly denied seeking dismissal based on the rider, however. *See id.* at 9, 19 ("Mr. Lin is not asking the Court to dismiss or enjoin his prosecution[.]"). During the trial, Defendant cited the rider in support of the Rule 29 motion presented at the close of the Government's evidence at trial. *See* Trial Tr. at 1020-21.

The Rider is an "annual appropriations rider that bars the [Department of Justice] from using its appropriated funds to impede medical-marijuana laws at the state level." *United States v. Stacy*, 156 F.4th 994, 1000 (10th Cir. 2025).[3] The Tenth Circuit has held that the Rider further bars the Department of Justice "from spending appropriated funds to prosecute private individuals who comply with state medical-marijuana laws." *Id.* at 1011-13. Defendant contends that his money laundering prosecution falls squarely within the prohibition of the Rider because his convictions interfere with Oklahoma's implementation of its medical marijuana laws. *See* Def.'s Mot. at 26-27. Defendant argues that the Government failed to present evidence at trial showing that Defendant's marijuana operations violated Oklahoma law and that, therefore, Defendant and his operations are protected from federal prosecution by virtue of the Rider. *See id*.

Defendant's argument is not persuasive. "To fall within the rider's protection, [Defendant] must prove by a preponderance of the evidence that he complied with the state's medical-marijuana laws." *Stacy*, 156 F.4th at 1014-18 (affirming the district court's denial of the defendant's motion to enjoin prosecution where the record demonstrated that the defendant "failed to substantially comply with Oklahoma's medical-marijuana laws"). The Government presented evidence at trial, however, that Defendant's operations/grows were not in compliance with Oklahoma's marijuana laws and regulations. *See, e.g.*, Trial Tr. at 426-429, 638-41, 647-49, 652-53, 853-55; *see also* Order of Dec. 29, 2024 (Doc. No.

[3] The most recent appropriations legislation, the Consolidated Appropriations Act, Pub. L. No. 119-75, 140 Stat. 173 (2026), enacted on February 3, 2026, did not renew or otherwise include the Rider.

171) at 8 (prohibiting Defendant from "present[ing] evidence of compliance with Oklahoma marijuana laws as a general or affirmative defense to the federal charges at issue" but ruling that, "if the Government asserts or presents evidence that Defendant violated Oklahoma marijuana law, Defendant may present evidence that he did not do so").

Accordingly, Defendant's untimely request to dismiss the relevant counts is denied.

*D. The Jury Instructions*

Defendant alternatively requests a new trial under Federal Rule of Criminal Procedure 33 on the basis of plain error in the Court's instructions to the jury on Counts 3 through 6. *See* Def.'s Mot. at 27-28.

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The Tenth Circuit regards new trial orders 'with disfavor' and advises that motions for new trial should be granted only with great caution." *United States v. Kaspereit*, No. CR-18-297-R, 2022 WL 49194, at *2 (W.D. Okla. Jan. 5, 2022) (quoting *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999)). "Because a motion for a new trial is based on the presumption that the verdict against the defendant is valid, the burden is on the defendant" to "prov[e] the necessity of a new trial." *United States v. Velarde*, 860 F. App'x 132, 137 (10th Cir. 2021) (alterations, omission, and internal quotation marks omitted); *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000). The determination of whether to grant a new trial "is committed to the sound discretion of the district court." *Walters*, 89 F. Supp. 2d at 1213.

As noted, the Superseding Indictment identified the specified unlawful activity for Counts 3 through 6 as "the felonious receiving, buying, selling, and dealing in controlled substances and conspiring to do the same." Superseding Indictment at 7 (citing 21 U.S.C. §§ 841(a)(1), 846). The jury instruction that prescribed the elements to be proved for those counts stated: "'Specified unlawful activity' includes the knowing or intentional distribution or possession with intent to distribute a Schedule I controlled substance under federal law, or conspiracy to do the same." Jury Instrs. at 47.

Defendant objects to the final "or" in the jury instruction, arguing that use of the disjunctive "or" rather than the conjunctive "and" impermissibly broadened the basis on which the jury could convict him beyond that charged in the Superseding Indictment. *See* Def.'s Mot. at 27-28.

Defendant's argument is foreclosed by well-established Tenth Circuit precedent. "It is entirely proper for the district court to instruct the jury in the disjunctive, though the indictment is worded in the conjunctive." *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994) (internal quotation marks omitted). Likewise, "[i]t is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." *United States v. Gunter*, 546 F.2d 861, 868-69 (10th Cir. 1976).

Accordingly, Defendant has not shown that "the interest of justice . . . requires" that a new trial be granted. Fed. R. Crim. P. 33(a).

CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal or New Trial (Doc. No. 201) is DENIED.

IT IS SO ORDERED this 24th day of August, 2026.

CHARLES B. GOODWIN
United States District Judge